STOKER, Judge.
In this single consolidated action six former police officers of the Lake Charles City Police Department seek to obtain a refund of monies deducted from their paychecks which were placed in a policemen’s pension fund. The facts are not in dispute. After trial the trial court rejected the plaintiffs’ claims for refunds.
FACTS
When plaintiffs were employed they were required to participate in a pension plan administered by the City of Lake Charles. The Lake Charles plan (as we will refer to it in this opinion) was authorized and set up under a State statute, LSA-R.S. 33:2221, et seq., which is Sub-part C of Part III of Chapter 4 of Title 33 of the Louisiana Revised Statutes. The City of Lake Charles (City) followed the practice until sometime in 1980 of refunding all contributions made to the Lake Charles plan by a police officer upon resignation if the police officer was not entitled to retirement or disability income. In 1980 the City ceased making refunds in such instances as it deemed them to be unauthorized under the Louisiana Supreme Court decision of Stevens v. Board of Trustees of the Police Pension Fund of the City of Shreveport, Louisiana, 370 So.2d 528 (La.1979). In the Stevens case the Supreme Court construed another portion of statutory authority contained in Part III of Chapter 4 of Title 33 of the Louisiana Revised Statutes, namely, Sub-part F, consisting of LSA-R.S. 33:2351, et seq. The Supreme Court held in Stevens that contributions to the Shreveport fund for police retirement were not authorized by the language of the statute in question.
In an earlier case, Hoffpauir v. City of Crowley, 284 So.2d 114 (La.App. 3d Cir. 1973), writ denied, 286 So.2d 366 (La.1973), this Court ruled that refund of contributions was authorized in the case of police officers of the City of Crowley terminated *163 under circumstances such as would not entitle them to a pension. (The Crowley plan was created under the same statutory authority with which we are involved here relative to Lake Charles, i.e., LSA-R.S. 83:2221, et seq.)
I.
The following language from Stevens is pertinent:
“The Court of Appeal, Second Circuit, relying upon the opinion of the Third Circuit in Hoffpauir v. City of Crowley, 284 So.2d 114 (La.App. 3rd Cir.1973), writ den. 286 So.2d 366 (La.1973), ruled that there was no significant difference between the statute involved in this instance and the statute involved in that case; the judgment of the district court was affirmed.
“The Board of Trustees sought writs, and the case is now before this Court on the issue of whether the statute creating the Police Pension Fund, LSA-R.S. 33:2351, et seq., is one which is intended to require or permit refunds. There is also the issue of the applicability of the decision in Hoffpauir, supra. The Board of Trustees claims error in the interpretation of the statute and in reliance upon Hoffpauir.
“Plaintiffs claim that the decisions below were correct, but that even if they were incorrect as an interpretation of the statute, the refusal to refund the forced contributions was in violation of plaintiffs’ constitutional rights to due process and equal protection under the constitutions of both the United States and Louisiana. “The initial question for our consideration is whether the statute, on its face, is ambiguous as to the refundability of the contributions. In addition to containing assessments from the salaries of the members of the Police Department, the fund is composed of monies from a former pension fund, court fines, licenses, privilege taxes, or permits for the sale of alcoholic beverages, as well as general alimony taxes from the municipality.
LSA-R.S. 33:2353, 2355. The statute also contains the following provisions:
“Section 2351:
“ ‘There is created a police pension fund for the police department of the city of Shreveport for pensioning all police officers of the police department of the city of Shreveport, their widows and children. For purposes of this Sub-part police officers shall be defined as those members of the Shreveport Police Department who meet the definition of police officers for the purpose of civil service rating and are so rated.’
“Section 2353:
“ ‘All funds derived and held or invested under the provisions of this Sub-part shall be administered as a sacred trust for the sole purposes stated in this Sub-part and at no time commingled or combined with any other fund.’
“Section 2360:
“ ‘The interest received from the investments after the fund has reached fifty thousand dollars or fifteen thousand dollars, as the case may be, and all money received from any source, shall be applicable to the payment of pensions and relief under this Sub-part.’
“Section 2364:
“This section outlines the actual pensions and benefits payable by the fund, including immediate benefits in the event of disability while in service of the department. Service in the department covers all time when a member is on the payroll, 24 hours a day. There are also benefits for those who remain with the department and who later retire. There are also benefits for widows and minor children.
“We find that there are specific limitations imposed upon the use of the monies in this fund, particularly by Sections 2351, 2353 and 2360. Absent particular language in the statute providing for refund of the contributions, there can be no such use of the monies. In the respects *164 in which this decision conflicts with the decision in Hoffpauir, we overrule that decision.”
Counsel for the plaintiffs persuasively argues that the Supreme Court’s decision in Stevens was based on policy reasons contained within the Shreveport plan (Sub-part F, LSA-R.S. 33:2351, et seq.) which are not contained in the statutes applicable to the Lake Charles plan which has its basis in the earlier legislation (Sub-part C, LSA-R.S. 33:2221, et seq.). Counsel also argues that the language of Stevens overruling Hoffpauir is confined to overruling Hoffpauir only insofar as it conflicts with the decision in Stevens as it relates to Sub-part F which provides for Shreveport only and does not affect the Hoffpauir decision insofar as it relates to Sub-part C, the subsection under consideration in Hoffpauir.
In ruling against the former Lake Charles policemen who are plaintiffs in this case the trial court followed the Stevens case and thus apparently deemed the thrust of the Stevens ruling to run equally against Sub-part C systems as well as the subsection F section which covers Shreveport only. We must decide whether plaintiffs’ persuasive arguments as set forth in their brief convince us that the trial court erred in its ruling and whether a distinction may be made in the language of Stevens as it applies to Sub-part F and as it applies to Sub-part C. We conclude that no distinction can be made.
. The provision of Sub-part C similar to Sub-part F’s Section 2351 (which creates the Shreveport plan), as it formerly existed, was LSA-R.S. 33:2221 A, which reads as follows:
“Section 2221. Municipalities affected “A. Every municipality which operates a paid police department and has more than seventy-five hundred but not more than two hundred fifty thousand inhabitants shall maintain a special fund for pensioning members of the police department and their widows, children, and dependent mothers, known as ‘The Police Pension and Relief Fund’, hereinafter referred to as ‘the fund’; provided, however, the provisions of this Sub-part shall be permissive only, and not mandatory, in any municipality having a population of more than seventy-five hundred and less than fifteen thousand inhabitants wherein the sale of intoxicating liquors is prohibited by law and wherein the employees, of the municipality are extended the benefits of Social Security under Chapter 13 of Title 42 of the Louisiana Revised Statutes.
* * * ft
Paragraph A of Section 2221 above quoted was deleted in 1973 upon adoption of a new retirement system set up as Sub-part G, LSA-R.S. 33:2371, et seq., entitled Municipal Police Employees Retirement System.
The sections of Sub-part C comparable to the sections of Sub-part F construed in Stevens, namely, Sections 2353 and 2360, are contained in Sections 2223 and 2230 of Sub-part C and read as follows:
“Section 2223. Fund not to be commingled
“All funds derived and held or invested under the provisions of this Sub-part shall be administered as a sacred trust for the sole purposes stated in this Sub-part and at no time commingled or combined with any other funds.
* * * # Jfc *
“Section 2230. Money available for pensions
“The interest received from the investments after the fund has reached fifty thousand dollars or fifteen thousand dollars, as the case may be, and all money received from any source, shall be applicable to the payment of pensions and relief under this sub-part.”
These two statutes read the same as those considered and construed by the Supreme Court in Stevens. After giving due consideration to appellants’ arguments, we cannot conclude that the Supreme Court would construe Sections 2223 and 2230 of Title 33 any differently from Sections 2353 and 2360. Appellants argued that the over *165 ruling of Hoffpauir by Stevens was meant to be confined to the Shreveport plan. Whether that is true or not is not material. The essential language construed is the same in both sub-parts and we see no reason why the language construed to prohibit refunds in one plan should not be construed the same with respect to the plan affecting former Lake Charles policemen.
Appellants argue that Sub-part G, a later statute applicable generally, contains a provision which specifically authorizes refunds of contributions in cases like these before us. LSA-R.S. 33:2375 C. Appellants argue that this provision expresses the public policy of the State and that it favors refund of contributions to retirement funds where termination does not occur because of death or retirement. This may be true but Sub-part C and Sub-part G are separate statutes and must be construed separately. In the absence of a provision such as LSA-R.S. 33:2375 C in Sub-part C, there can be no refund of contributions.
II.
Plaintiffs-appellants alternatively seek relief under the doctrine of equitable estoppel. This basis for relief is also persuasively argued. In essence, appellants urge that at the time they were employed by the City as police officers they were encouraged to rely on certain information and representations made to them by officials of the City on behalf of the City in an indoctrination program. In essence, they were told that the pension fund contributions would be refunded if they terminated their employment with the Lake Charles Police Department. Without going into an extensive discussion of the doctrine of es-toppel, we state that it is our opinion that the City has successfully answered appellants’ contentions concerning the applicability of this doctrine.
The City urges that any representations which may have been made to appellants at the time they were employed were merely statements of the prevailing practice of making refunds in conformity with the judicial approval given by this Court of Appeal in Hoffpauir. As such, any statements or representations could not form the basis of an estoppel. We think this is correct. See Louisiana State Troopers Association, Inc., et al. v. La. State Police Retirement Board, 417 So.2d 440 (La.App. 1st Cir.1982). Appellants urge that they relied on a handbook they were given at the time of their employment relating to membership of the City of Lake Charles in the Louisiana Municipal Retirement System. The booklet specifically stated that fire and police employees had a separate retirement system established by state law. That separate system was that covered by Sub-part C, LSA-R.S. 33:2221, et seq. We fail to see how appellants may rely on the handbook.
III.
Finally, as a further alternative argument, appellants urge constitutional issues. The claim that denying refunds to appellants, such as were previously granted to former police employees, constitutes a violation of the equal protection clause of the constitutions of the United States and the State of Louisiana. The constitutionality question was dealt with in Stevens adversely to appellants’ contentions and we see no need to discuss them.
CONCLUSION
For the foregoing reasons the judgment of the trial court is affirmed. The costs of this appeal will be assessed to plaintiffs-appellants.
AFFIRMED.